29 So.2d 339

**MULLINS et al. v. BOARD OF EDUCATION OF ETOWAH COUNTY et al.**

7 Div. 891.

Supreme Court of Alabama.

March 6, 1947.

Geo. C. Hawkins and Buford L. Copeland, both of Gadsden, for appellants.

Lusk & Burns, of Gadsden, for appellees.

STAKELY, Justice.

This is an appeal from a decree of the equity court sustaining the demurrer to the bill of complaint. The bill was filed by Joe P. Mullins and others, as taxpayers of Etowah County, Alabama, and as members of the Board of Trustees of John S. Jones Junior High School against the Board of Education of Etowah County, Carl Q. Baxter, as Superintendent of Education of Etowah County, and John Alex Burns and others as members of the Board of Education of Etowah County. The purpose of the bill is to enjoin the respondents from constructing a proposed school building in a particular community in Etowah County or in the alternative to declare legal

rights of the Board of Education and Superintendent of Education of Etowah County.

The allegations of the bill in substance show the following. The respondents have requested and received bids for the proposed construction of a school building to consist of 18 rooms or more, to be located in the Southside Community in Etowah County, Alabama. The building is to "consist of grammar school and high school grades, a vocational school and an agricultural school." The total cost has been estimated to be equal to the total or the greater portion of the amount held by or appropriated to Etowah County for the construction of school buildings. The building is proposed to be located on a tract of land known as the Burn's place which is about a mile and a half to two miles east of the Coosa River on the Gilbert's Ferry Road.

The Southside Community was formerly served by the Southside School, which was destroyed by fire. It is a sparsely settled area and the total number of children residing therein is insufficient to require a school of the proposed size and type. The plan is to provide for the transportation to the proposed school of children from areas now served by other schools, including the John S. Jones Junior High School.

The community now served by the John S. Jones Junior High School is more thickly populated and has more children of school age than the Southside Community. More students from the community served by the John S. Jones Junior High School would attend the proposed school than students of the Southside Community. The proposed plan would necessitate the transportation of a greater number of children for much greater distances and would remove the Junior High School grades from the John S. Jones Junior High School.

The John S. Jones Junior High School consists of a modern 13 room school building with adequate room and facilities to care properly for the needs of the students living in the John S. Jones Community. It is centrally located in the community. The withdrawal therefrom of the Junior High School students would leave a part of the school building vacated and unused, which would be a waste of space and facilities.

The school building program of Etowah County has been at a standstill since the beginning of the war in 1941 and many school buildings used at that time have since been destroyed by fire or abandoned for lack of adequate facilities or repairs. The communities formerly served by such schools are now served inadequately by overcrowding of students in neighboring communities. The money formerly used for normal construction and repair of school buildings in Etowah County from year to year has accumulated unspent during the war years. Such money is now held by the county board of education to be spent for the benefit of all citizens in the extension of the school building program. The money so held amounts to approximately $160,000, being $120,000 received as an appropriation from the state for the school building program and $40,000 collected on insured losses and taxes in the county during the war years. Under the law the respondents can borrow $80,000 for school building purposes. This makes a total of $240,000 available for the school building program or to become available in the near future.

The plan, if put into effect, will result in the construction in the Southside Community of a school building larger than needed by that community to care for the school children residing therein and a portion of the building so constructed would remain empty and unused. The respondents further propose to remove from neighboring communities, including the John S. Jones community, sufficient students to fill the proposed building, which will leave portions of the school facilities now being used in the John S. Jones community empty and unused. In either event the result will be a waste of funds and facilities held by respondents to the detriment of the taxpayers in the county and will prevent construction of much needed school buildings in other communities in Etowah County. The construction of a smaller and less expensive building for Southside High School will be adequate

and sufficient to serve the needs of school children living in Southside Community.

It is further alleged that "the proposed action of the defendants * * * is a gross abuse of the discretion vested in them by the laws of the State of Alabama."

■ This court is committed to the view that the courts of this state will not ordinarily seek to control the exercise of the broad discretion given by the statutes to the county board of education since the powers vested in it are quasi-judicial as well as administrative. This principle prevails even though in the exercise of discretion there may have been error or bad judgment. The courts will act, however, if the acts of county boards of education are tainted with fraud or bad faith or gross abuse of discretion. Hodges v. Board of Education of Geneva County, 245 Ala. 64, 16 So.2d 97.

It is conceded by appellants that there is nothing to show either fraud or bad faith in the present bill.

■ It is insisted, however, that the allegations of the bill present a case showing gross abuse of discretion. So far as we are aware this court has not attempted to define precisely "gross abuse of discretion", perhaps for the reason that it is best to allow the facts and circumstances peculiar to each case to determine its presence or absence. In a general way, however, we say that it means such an arbitrary and unreasonable act or conclusion as to shock the sense of justice and indicate lack of fair and careful consideration. State ex rel. King et al. v. County Board of Education of Russell County, 214 Ala. 620, 108 So. 588; Scott v. Mattingly, 236 Ala. 254, 182 So. 24; Christian v. Jones, Superintendent of Public Schools, 211 Ala. 161, 100 So. 99, 32 A.L.R. 1340.

■ The broad powers conferred on the county board of education to which we have referred include the power to consolidate schools and to arrange for transportation of pupils to and from such consolidated school (§ 76, Title 52, Code of 1940), the power to determine the "kind, grade and location of schools" (§ 113, Title 52, Code of 1940) and the power to adopt "a building program adequate to the present and future needs of the schools in the county" (§ 116, Title 52, Code of 1940). Do the allegations of the bill remove the case from within the discretion of the board to an arbitrary, unreasonable and unjustifiable misuse of power? Do the allegations of the bill overcome the presumption which is in favor of the reasonableness and propriety of the action of the board? Christian v. Jones, Supt. of Ed., supra. It does not appear so to us.

■ The proposed school is to replace a school destroyed by fire in a community now without a school. Construing the bill against the pleader, it does not appear with sufficient certainty how much money is to be used to consummate the plan or how much empty or waste space will be created in the new school or be left in the John S. Jones Junior High School. There is nothing to show the dimensions, area or topography of the proposed site. There is nothing to show to what extent the proposed site is or is not a suitable school center or in a central location from the standpoint of other communities, not just the community in which one school, the John S. Jones Junior High School, is located. There is nothing to show a bad location from the standpoint of roads or the condition thereof.

■ Beyond all this there is nothing to show that the plan is out of step with the future needs of the schools of the county so far as they may be reasonably foreseen. § 116, Title 52, Code of 1940, supra. In the absence of a contrary showing it must be assumed that the authorities gave careful and due consideration to the growing and expanding needs of education in the county. The statutes as well as the high purposes of education contemplate that a plan should be adopted that has vision and foresight. A sparsely settled community today may well be a populous community tomorrow. Matters which may create irritations today because of inconvenience etc., may be relatively unimportant in comparison with a long range plan.

■ The allegations of the bill will not be aided by the general allegation that "the proposed action of the defendants

48

is a gross abuse of discretion" because this is "merely to apply an epithet without defining the act". State ex rel. King v. County Board of Education, supra; Hodges v. Board of Education of Geneva County, supra. The court acted correctly in sustaining the demurrer to the bill.

Affirmed.

GARDNER, C.J., and FOSTER and LAWSON, JJ., concur.