89 So.2d 96

**BOARD OF EDUCATION OF BLOUNT COUNTY et al.**

v.

**C. B. PHILLIPS, Superintendent of Education, et al.**

6 Div. 829.

Supreme Court of Alabama.

July 26, 1956.

Johnson & Randall, Oneonta, for appellees.

Finis E. St. John and Jack C. Riley, Cullman, for appellants.

LIVINGSTON, Chief Justice.

This is an appeal from a judgment overruling the respondents' demurrer to a bill in equity which was filed for the purpose of enjoining the establishment of a senior high school at Appalachian, in Blount County, Alabama. The complainants are the Blount County Superintendent of Education and 38 individuals who are resident taxpayers and patrons of the Blount County school system. The respondents are the Board of Education of Blount County, Houston C. Blackwood, Lawrence E. Sellers, Ernest T. Bynum, Frank Carter, and Marvin L. Cox, as members of the Board of Education of Blount County, and W. J. Terry, as Superintendent of Education of the State of Alabama.

The bill alleges that the Board of Education of Blount County operates a general school system throughout the county with the exception of the City of Oneonta which operates its own system; that the county schools operate on a split or "cotton picking term," whereas the city schools do not; that the children in the Appalachian area would suffer economically from a cotton picking term; that the population of Blount County decreased between the 1940 and 1950 census while the population of Oneonta and the adjacent area increased; that there are six white senior high schools and eight junior high schools, including one at Appalachian in Blount County; that the State Department of Education in 1952–53 recommended there be only four senior high schools in the county, and that the junior high school at Appalachian be discontinued; that there is only one paved road in the area of Appalachian; that the senior high students in the Appalachian area attend the high school in Oneonta, and the majority desire to continue to do so; that the senior high school in Oneonta has 650 students and 20 teachers, and offers a wide variety of subjects and extracurricular activities; that the County Board of Education owes $184,000 in outstanding warrants due September 1954 to September 1965, $120,000 in short-term loans to the State National Bank; has on hand $55,220.92 cash, and has a deficit balance of $77,726.87, to be made up from future earnings; that many school buildings in the county need repairs and improvements including inside toilets, and the County Board of Education is without funds to provide these items; that there would be less than 50 students in the senior high at Appalachian, and they would have a very limited choice of courses and

extracurricular activities; that some students would have a longer ride on the school bus than they now have; that the site at Appalachian is unsuited for a senior high school; that the water supply is insufficient; that Appalachian is a small community with no nearby densely populated areas, and the average daily attendance at the junior high school there is 73.25; that it would cost $75,000 to establish a senior high school and would require two additional teachers at a salary of $2,500, which would be a waste of the taxpayers' money; that the Blount County Board of Education, without the recommendation or approval of the County Superintendent of Education, arbitrarily and contrary to the best interest of the schools and students, authorized the establishment of a senior high school at Appalachian; that the State Superintendent of Education, acting solely on the unanimous request of the County Board of Education and contrary to his better judgment, approved the action of the County Board and authorized a senior high school at Appalachian; that the County Board authorized the chairman of the board to advertise for bids for the sale of $75,000 in school warrants, payable from the county-wide three-mill school tax in order to establish the school, and that the warrants have been advertised for bids.

An amendment to the bill sets out the repairs and equipment needed at various schools in the county and alleges that the county board will be without the funds necessary to meet those needs for several years if it incurs the additional $75,000 deficit. It further alleges that none of the county high schools are overcrowded and that no high school in the county has ever qualified for membership in the Southern Association of Schools and Colleges.

The complainants prayed that the respondents be enjoined from accepting any bid upon any warrant or bond against the Blount County-wide three-mill school tax, issuing any warrants, notes, or other evidence of indebtedness against the Blount County-wide three-mill tax, or any other school-fund tax or income or anticipated revenue, selling any school warrants or bonds, incurring any liability against the Blount County school funds or assets, or anticipated tax or revenue for the purpose of establishing a senior high school at Appalachian, or constructing a senior high school building, or remodeling the present school at Appalachian for a senior high school. They further prayed that the respondents be enjoined from building a senior high school or establishing a senior high school at Appalachian, or remodeling the present school building for a senior high school.

■ It is within the discretion of the County Board of Education to determine the need for and location of schools within the county, and in the absence of fraud or bad faith or gross abuse of discretion, the courts will not interfere and·thus substitute their judgment for the judgment of the board. Vaughan v. McCartney, 217 Ala. 103, 115 So. 30; Mullins v. Board of Education of Etowah County, 249 Ala. 44, 29 So.2d 339.

In Scott v. Mattingly, 236 Ala. 254, 182 So. 24, 26, this court held a bill seeking to enjoin a county board of education from purchasing certain school buses to be without equity and applied the rule as stated in Corpus Juris. In that case the court said:

"In Vol. 32, Corpus Juris, p. 242, § 384, the author of the text states the rule with respect to restraining public officials in the exercise of their discretion in the performance of their official duties, as follows:

" 'Where public officials are intrusted with discretionary power in certain matters, their exercise of such discretion will not be controlled by injunction in the absence of any showing that their action is fraudulent or in bad faith, or that it amounts to an abuse

of the discretion so vested in them, and this is so although the powers vested in such officers are quasi judicial as well as administrative; and especially is this true where the restraining of the officer's action would impose a large additional expense on the public. Courts will not hear proofs and attempt to determine whether the discretion is wisely exercised or not. Where the law casts both a right and a duty upon an officer which involves exercise of discretion, the officer's conduct with respect to his duty or discretion is no more to be controlled by injunction than by mandamus. Interference in such a case would be to interfere with the ordinary functions of government. Courts cannot legislate or invade the province of the other departments of government in matters of policy. However, the general rule has no application where there has been fraud or collusion on the part of the public officer in the performance of his duty, and an injunction may be issued in case of a gross abuse of discretion, but to constitute an abuse of such discretion it must appear that it was exercised on grounds or for reasons clearly untenable, or to an extent clearly unreasonable.' "

The position of this court is clearly and concisely set out in Mullins v. Board of Education of Etowah County, supra, in which it is said [249 Ala. 44, 29 So.2d 341]:

"This court is committed to the view that the courts of this state will not ordinarily seek to control the exercise of the broad discretion given by the statutes to the county board of education since the powers vested in it are quasi-judicial as well as administrative. This principle prevails even though in the exercise of discretion there may have been error or bad judgment. The courts will act, however, if the acts of county boards of education are tainted with fraud or bad

faith or gross abuse of discretion. Hodges v. Board of Education of Geneva County, 245 Ala. 64, 16 So.2d 97.

\*    \*.    \*    \*    \*    \*

"It is insisted, however, that the allegations of the bill present a case showing gross abuse of discretion. So far as we are aware this court has not attempted to define precisely 'gross abuse of discretion', perhaps for the reason that it is best to allow the facts and circumstances peculiar to each case to determine its presence or absence. In a general way, however, we say that it means such an arbitrary and unreasonable act or conclusion as to shock the sense of justice and indicate lack of fair and careful consideration. State ex rel. King v. Board of Education of Russell County, 214 Ala. 620, 108 So. 588; Scott v. Mattingly, 236 Ala. 254, 182 So. 24; Christian v. Jones, Superintendent of Public Schools, 211 Ala. 161, 100 So. 99, 32 A.L.R. 1340."

In discussing the facts that are necessary to present a case of gross abuse of discretion, the Supreme Court of Pennsylvania in Lamb v. Redding, 234 Pa. 481, 83 A. 362, 363, said:

" * * * That all the things here complained of—that is to say, the abandonment of the present site regardless of the amount expended thereon, and the selection and purchase of the one proposed—are within the power delegated to the school board, is not open to question; and presumably the determination of the board to do these things rests upon considerations of public welfare, and has been reached by the exercise of intelligent judgment in connection therewith. The burden of showing to the contrary, when the action of a school board is challenged with respect to matters committed to its discretion, is a heavy one; for the

power of the courts in such cases is exceedingly limited, and they are permitted to interfere only where it is made apparent that it is not discretion that is being exercised but arbitrary will or caprice. Discretion involves the exercise of judgment incidental to the proper performance of the duty delegated. When the contention is that the proposed action is unwise, no matter by what consensus of opinion this is shown, the law will refer it to mistaken judgment over which it has no supervision. But if it cannot be so referred, if the facts admit of no other conclusion than that the determination of the board has been influenced by other considerations than the public interests, no matter what these may have been, the law will regard it as an abuse of power, a disregard of duty, and it becomes the duty of the courts to interfere for the protection of the public. * * *"

We are of the opinion that the bill before us is insufficient to present a case of gross abuse of discretion. The allegations that the action of the respondents is "a gross abuse of discretion and arbitrarily unjust" and "is such an arbitrary and unreasonable act or conclusion as to shock the sense of justice and indicate lack of fair and careful consideration" do not aid the bill. Mullins v. Board of Education of Etowah County, supra; State ex rel. King v. Board of Education of Russell County, 214 Ala. 620, 108 So. 588; Hodges v. Board of Education of Geneva County, 245 Ala. 64, 16 So.2d 97.

■ There are no facts alleged to indicate that the board was motivated by any consideration other than the public interest or that it failed to consider all the arguments which the complainants urge against the proposed action. The facts alleged which complainants rely on to show that the respondents abused their discretion may be grouped into these main categories: (1) that the population of the Appalachian area is not sufficient to warrant a senior high school, (2) that the money required to establish the proposed school should be spent in other ways, if at all, (3) that the more varied curriculum and extracurricular activities available at the Oneonta High School would make it beneficial to the students to attend the city high school, (4) that the physical equipment at the Appalachian School and the geographic conditions of the area make Appalachian an unsuitable site for a senior high school, and (5) that the county board acted contrary to the recommendations of the county superintendent. It is apparent that in making a determination on each of these considerations there is ample room for reasonable differences of opinion, and there is nothing in the bill to indicate that the County Board of Education did anything other than adopt the solution which in their judgment was proper. As pointed out in the authorities cited above, the court will not attempt to determine whether the board's action was wise or unwise. The fact that others may consider the board's judgment was not to the best interests of the district affords no grounds for relief. State ex rel. Ross v. Board of Education of the City of Beloit, 177 Kan. 540, 280 P.2d 929; School District Number 17 of Sherman County v. Powell, 203 Or. 168, 279 P.2d 492.

■ Appellees argue that the demurrer was properly overruled in that the bill presents a basis for injunctive relief on the theory that the County Board of Education has no authority to take the action sought to be enjoined without the recommendation or approval of the County Superintendent of Education. This contention must fail because it appears from the bill that although the County Superintendent neither recommended nor approved the action of the County Board of Education, the dispute was settled by the State Superintendent of Education by his action in approving the action of the County Board of Education and authorizing the establishment of a senior high school at Appalachian. The

State Superintendent of Education is given the authority to settle disputes and controversies involving the proper administration of the public school system and to review the action of county boards of education and county superintendents of education and make a disposition of the matter which is binding on the parties concerned. Tit. 52, §§ 44, 47, Code of Alabama 1940.

We conclude that the bill does not present a case entitling the complainants to the relief prayed for and that the demurrer was due to have been sustained. The judgment of the circuit court therefore must be reserved.

Reversed and remanded.

SIMPSON, MERRILL and SPANN, JJ., concur.